BARCELLOS & WOLFSEN, INC.; Boston Ranch Company; Fabry Farms, Inc.; Marks Grain, Inc.; Edwin R. O'Neill; O'Neill Livestock Company; Valle Verde, Inc.; Plaintiffs,

v.

WESTLANDS WATER DISTRICT; John Blackburn; Price Giffen & Associates; Wayne Dedman; Jim Lowe, Inc.; Cinco Farms, Inc.; Brughelli Farms; Polvadero Farms; R & N Farms; Richard Swearingen; Three Rocks Ranch; United States of America; Department of Interior; Bureau of Reclamation; Cecil D. Andrus; Guy R. Martin; R. Keith Higginson; Billy E. Martin; Defendants.

WESTLANDS WATER DISTRICT, Counterclaimant and Cross-Claimant,

v.

BARCELLOS & WOLFSEN, INC. et al., Counterclaim and Cross-Claim Defendants.

No. CV 79–106–EDP.

United States District Court, E. D. California.

April 25, 1980.

Donnelly, Clark & Chase by Robert M. Newell, Jr., and William M. Smiland, Los Angeles, Cal., for plaintiffs and counterclaim and cross-claim defendants.

Kronick, Moskovitz, Tiedmann & Girard by Adolph Moskovitz, Sacramento, Cal., for defendant and counterclaimant and crossclaimant Westlands Water District.

Berryhill, Kuney & Burckhardt by Kenneth A. Kuney, Tulare, Cal., for defendants, John Blackburn, Price Giffen & Associates, Wayne Dedman, Jim Lowe, Inc., and Cinco Farms, Inc.

Diepenbrock, Wulff, Plant & Hannegan by Forrest A. Plant and Jack V. Lovell, Sacramento, Cal., for defendants, Brughelli Farms and Richard Swearingen.

Herman Sillas, U. S. Atty. by Solomon E. Robinson, Asst. U. S. Atty., Sacramento, Cal., for defendants, United States of America, Department of Interior, Bureau of Reclamation, Cecil D. Andrus, Guy R. Martin, R. Keith Higginson, and Billy E. Martin.

## MEMORANDUM DECISION

PRICE, District Judge.

The motion of the United States of America, Department of Interior, Bureau of Reclamation, Cecil D. Andrus, Guy R. Martin, R. Keith Higginson and Bill E. Martin, hereinafter referred to as "The Federal Defendants" to dismiss the plaintiff's Third Amendment Complaint and Supplemental Complaint came on for hearing before the Court on Monday, March 31, 1980. Calendared for hearing at the same time and heard simultaneously with the foregoing motion was the motion of the United States of America, Department of the Interior, Bureau of Reclamation, Cecil D. Andrus, Guy R. Martin, R. Keith Higginson and Bill E. Martin, hereinafter referred to as "The Federal Cross-Claim Defendants," motion to Dismiss the Counterclaim and Cross-Claim filed against The Federal Cross-Claim Defendants by the defendant Westlands Water District, hereinafter referred to as "Westlands".

The thrust of the Federal Defendant's motion as against the plaintiffs attacked the jurisdiction of the Court to entertain this action as against the said Federal Defendants, arguing that any such action against the defendants is barred by the doctrine of sovereign immunity. The same argument is urged as a grounds for dismissal of Westlands' Counterclaim and Cross-Claim.

Acknowledging the ever-present risk of over-simplification in discussing this complex litigation, the facts which give rise to this litigation, briefly stated for purpose of this decision, are as follows:

In 1963, the Water and Power Resources Service of the Department of Interior of the United States entered into a contract entitled as follows: "Contract Providing for Water Service," hereinafter referred to as "The 1963 Contract".

Although the Federal Defendants and the Federal Cross-Claim Defendants have not as yet answered, there appeared to be no dispute at the time of argument between the parties as to the due execution of this document.

At some point in time after the execution of this document, and the respective parties commenced the performance of their obligation and acceptance of benefits under The 1963 Contract, the United States government, acting through the office of the Department of Interior, disputed the validity of The 1963 Contract and raised legal questions as to the obligation of the United States to deliver the water under the water service contract. Simultaneously, the United States disputed the legal basis of a draft of an agreement providing for the construction and repayment of the distribution and drainage system concerning the same project which had been submitted to Congress for approval. It is asserted that the position of the government of the United States at this point was that unless substantial concessions were made in regard to salient features of The 1963 Contract by Westlands, no water deliveries would be made to Westlands, from the water sources available to the United

States to service this contract. Judicial notice is taken that such a turn of events would have created economic catastrophe in the western regions of Kings, Fresno, Madera and Merced Counties served by Westlands.

The Plaintiffs in the instant action ultimately filed a class action on behalf of named plaintiffs and members of a class similarly situated who claimed priorities, both as to amount of water and price of water, as against other landowners within Westlands. They named as defendants in their amended pleadings the Westlands Water District itself, as well as other individuals and entities which plaintiffs contend represent classes of owners junior in priority with regard to entitlement to water from the District.

After removal from State court, Westlands petitioned and obtained an Order requiring the Federal Defendants to be joined as indispensable parties. Upon the entry of the Federal Defendants into the litigation lists, Westlands filed its Cross-Claim and Counterclaim against the Federal Defendants seeking a determination of the respective rights and duties of the parties under the aforementioned contract and Federal Reclamation Law. The Federal Defendants now seek removal from the litigation on the grounds previously mentioned.

The Court recognizes the fundamental principle of law that the sovereign cannot be haled into court without its express consent. However, as the ambit of governmental activities broadens and as the effect of that activity touches more and more of the daily activities of its citizens, the consent of the United States to be made a party defendant in Federal courts (and occasionally in State courts) has increased apace. It seems to the court that several such consent statutes opened the door to the Federal courthouse by which The Federal Defendants and The Federal Cross-Claim Defendants may be brought to the bar of this Court.

28 U.S.C. § 1331(a) provides as follows:

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, or any agency thereof, or any officer or employee thereof in his official capacity."

■ It seems to the Court that the decision of the United States Supreme Court in *Ivanhoe Irrigation District v. McCracken*, 357 U.S. 275, 78 S.Ct. 1174, 2 L.Ed.2d 1313 (1958), is dispositive of this matter. Although the litigation in that case arose in State court,[1] the Court held that since the contracts in question, like the 1963 Contract here, were entered into pursuant to the Reclamation Act of 1902, the interpretation of such contracts must therefore be in accordance with federal law and not state law; hence, the Supreme Court assumed jurisdiction. Indeed, the contract pleaded by the plaintiff as the root-cause of this litigation, recites that: "This contract . . . in pursuance generally of the Act of June 17, 1902 (32 Stat. 388), and Acts amendatory thereto or supplementary thereto all collectively hereinafter referred to as the Federal Reclamation Law".

In the *Ivanhoe Irrigation District v. McCracken, supra,* case, commenting on the contracts there entered into by the irrigation districts in question with the United States pursuant to the Reclamation Act, the Supreme Court stated:

"As to the rights and duties of the United States under the contracts, these are matters of federal law on which this Court has final word. *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943)."

■ Clearly, the action of the government which brings these parties into court

---

1. Section 46 of the Omnibus Adjustment Act of 1926 requires that "no water shall be delivered pursuant to any contract entered into with an irrigation district until such contracts have been confirmed by a State court of competent jurisdiction." See 43 U.S.C. § 511.

originated in an alleged *ultra vires* agency action. As stated in *DeLao v. Califano*, 560 F.2d 1384, 1391 (9th Cir. 1977):

"Two exceptions to the doctrine of sovereign immunity have been recognized by the courts when the suit is brought against a government official rather than directly against the United States. Such suits may be brought if the official's actions were (1) *ultra vires* or (2) were performed pursuant to an unconstitutional statute or in an unconstitutional manner. *Dugan v. Rank*, supra, 372 U.S. [609] at 621–22, 83 S.Ct. 999 [at 1006–07, 10 L.Ed.2d 15]."

■ Although there is, arguably, authority to the contrary, the Court would equally rest its decision that this Court has jurisdiction over The Federal Defendants and The Federal Cross-Claim Defendants on the McCarran Amendment, 43 U.S.C. § 666. That amendment provides, in pertinent part, as follows:

"Consent is [hereby] given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: Provided, That no judgment for costs shall be entered against the United States in any such suit." [43 U.S.C. § 666(a)]

The Federal Defendants and Federal Cross-Claim Defendants argue that this section is inapplicable because all of the claimants to water from a given stream are not defendants in the action. As was stated in *Dugan v. Rank*, 372 U.S. 609, at page 617, 83 S.Ct. 999, at page 1005, 10 L.Ed.2d 15, at page 22:

"We go directly to the question of joinder of the United States as a party. We agree with the Court of Appeals on this issue and therefore do not consider the contention at length. It is sufficient to say that the provision of the McCarran amendment, 66 Stat. 560, 43 U.S.C. § 666, relied upon by respondents and providing that the United States may be joined in suits 'for the adjudication of rights to the use of water of a river system or other source,' is not applicable here. Rather than a case involving a general adjudication of 'all of the rights of various owners on a given stream,' S.Rep. No. 755, 82d Cong., 1st Sess. 9 (1951), it is a private suit to determine water rights solely between the respondents and the United States and the local Reclamation Bureau officials. In addition to the fact that all of the claimants to water rights along the river are not made parties, no relief is either asked or granted as between claimants, nor are priorities sought to be established as to the appropriative and prescriptive rights asserted."

Hence, in dealing with a McCarran Act case, it is important to look at the relief sought, not merely at the subject matter of the litigation.

Counsel for the moving parties does not explain what Congress meant by "(2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit."

No Federal case that we can find has ever considered the sweep of the portion of the McCarran Act as it relates to the "administration" of water rights.[2]

2. The Colorado Supreme Court in *Fed. Y. Center v. District Court, City of Jefferson*, Colo., 575 P.2d 395 (1978), did consider this section of the McCarran Act as it consented to State Court jurisdiction in water rights litigation; i. e., a quiet title action.

It would appear to the Court that the original intent and purpose of the McCarran Act is satisfied. Taken together, Plaintiff and Cross-Claimant are requesting the Court to adjudicate the rights of all the parties and the United States government as they relate to the water which the government has acquired for the operation of the San Luis Unit of the Central Valley Project.

Secondly, the Cross-Complainants, in effect, request the Court to delineate with some particularity the applicable laws, administrative regulations and rules by which the Federal Cross-Claim Defendants must administer the San Luis Unit of the Central Valley Project and the waters acquired by the United States government for that purpose.

The Federal Defendants and Cross-Claim Defendants further argue that even though a jurisdictional basis is found to bring them into court, neither the plaintiff nor Westlands has plead sufficient facts to show that a controversy exists between the respective parties. Counsel for the United States did admit reluctantly during oral argument that the most recent amendments to plaintiffs' pleadings did spell out a justiciable controversy. The Court concurs with that concession.

As against Westlands, however, the Federal Defendants point to Westlands conclusion of the interim agreements and the facts that Westlands has continued to negotiate with the Federal Defendants looking to the implementation of the new contracts, one of which would replace the 1963 Contract. Were the solution to this case that simple!

As previously mentioned, the root cause of this litigation is the insistence of the Federal Defendants that the United States government is not legally bound by the duly executed 1963 Contract despite the fact that extensive investments, both private and public, have been made in reliance thereon, and both sides apparently entered into performance of that contract without objection. Despite the fact that the powers of subordinate agencies to contract on behalf of the sovereign are governed by different rules than are applicable in real life, the resolution of every contention made by the respective parties to this Contract will, in part at least, be affected by the central decision that the Court must make, namely, did the government have the legal right—as opposed to the power—to terminate the 1963 Contract?

While the Court is not sufficiently naive to believe that all of the potential litigation involving the San Luis Unit of the Central Valley Project can be disposed of with this case, the Court is hopeful that with careful management of the litigation and the continued cooperation of respective counsel for the parties to the action, that many of the issues inherent in the relationship of the parties may be disposed of. It appears to the court that the relationship between Westlands and the Federal Cross-Claim Defendants is similar to that confronting the Court in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 274, 61 S.Ct. 510, 512–13, 85 L.Ed. 826, 829 (1940):

> "It is clear that there is an actual controversy between petitioner and the insured. Compare *Aetna L. Ins. Co. v. Haworth*, supra, (300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 ALR 1000.) If we held contrariwise as to Orteca because, as to him, the controversy were yet too remote, it is possible that opposite interpretations of the policy might be announced by the federal and state courts. For the federal court, in a judgment not binding on Orteca might determine that petitioner was not obligated under the policy, while the state court, in a supplemental proceeding by Orteca against petitioner, might conclude otherwise."

Justice Murphy's observations in that case are equally applicable to possible differing decisions in different Districts of the Federal Courts.

For all of the foregoing reasons, the Motion of the Federal Defendants to Dismiss the plaintiffs' Complaint and the Counterclaim and Cross-Claims of Westlands are denied.